IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| GERMAINE ANTONIO BAKER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00686-O-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the § | |
| Social Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Germaine Antonio Baker ("Baker") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). (ECF No. 1). After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision

I.      STATEMENT OF THE CASE

Baker filed an application for DIB on October 6, 2014, alleging a disability onset date of October 15, 2012. (Transcript ("Tr.") 88, 96–98, 173–74). The Commissioner initially denied the application for benefits on January 9, 2015, (Tr. 96, 114–17), and denied upon reconsideration on April 8, 2015 (Tr. 96, 120–22). Baker requested a hearing before an Administrative Law Judge ("ALJ"), (Tr. 123–24), and a hearing was held by before an ALJ in Dallas, Texas on December 19, 2016 (Tr. 31–78). An attorney represented Baker at the hearing. (*Id.*). Vocational Expert ("VE") Jennifer Maginnis testified at the hearing. (*Id.*). The ALJ noted in the decision that Baker

filed a prior application for benefits on September 10, 2013, which was initially denied on October 28, 2013 and upon reconsideration on July 12, 2014. (Tr. 12). Because Baker's current application was filed within twelve months after his previous application was initially denied, the ALJ reopened his previous case for a determination on the merits. (*Id.*). The ALJ issued a decision on September 15, 2017, finding Baker not disabled. (Tr. 28).

In the decision, the ALJ employed the statutory five-step analysis. At step one, the ALJ found that Baker had not engaged in substantial gainful activity since October 15, 2012, the alleged disability onset date. (Tr. 15, Finding 2). At step two, the ALJ found that Baker had the severe impairments of:

> status post bilateral shoulder surgeries . . . for impingement syndrome and adhesive capsulitis; myofascial pain syndrome; arthritis, degenerative and/or rheumatoid; major depressive disorder, recurrent, severe without psychosis versus bipolar disorder; posttraumatic stress disorder (PTSD); somatization disorder; personality disorder, not otherwise specified (negativistic); syncopal episodes versus seizures . . . ; hives/urticaria; cognitive disorder . . . ; cervical very mild spondylosis with small C3-4 ventral defect; lumbosacral spondylosis; and left ulnar neuropathy.

(Tr. 15, Finding 3). At step three, the ALJ found that Baker's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15–16, Finding 4). The ALJ, therefore, determined that Baker had the residual functional capacity ("RFC") to:

> lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant is unable to reach overhead and cannot climb ladders, ropes, and scaffolds. The claimant cannot balance, but can occasionally stoop, kneel, crouch, and crawl. He can also occasionally climb ramps and stairs. The claimant cannot work with moving machinery, work at unprotected heights, and work near open flames/bodies of water. The claimant cannot drive. The claimant can understand, remember, and carryout simple instructions, and perform routine and repetitive tasks. The claimant cannot interact with the public and can only occasionally interact with supervisors and coworkers in a setting where the claimant can perform work tasks individually without having to cooperate closely with others as part of a team. Within the foregoing parameters, the claimant can respond appropriately to

> usual work situations and deal with changes in routine works setting [sic]. The claimant would not be absent from work more than twice in a month.

(Tr. 16–17, Finding 5). At step four, with this RFC, the ALJ found that Baker has no past relevant work. (Tr. 22, Finding 6). At step five, after considering the VE's testimony and Baker's age, education, work experience, and RFC, the ALJ determined that there were a significant number of jobs in the national economy that he could have performed. (Tr. 23, Finding 10). Thus, the ALJ ruled Baker had not been disabled from October 15, 2012, through the date of the decision. (Tr. 24).

The Appeals Council denied Baker's request for review on July 10, 2018. (Tr. 1–6). Therefore, the ALJ's decision became the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II.   FACTUAL BACKGROUND

According to Baker's pleadings, testimony at the administrative hearing, and the administrative record, he was 37 years old at the time of the administrative hearing. (Tr. 37). He has a high school education with some college. (Tr. 37). His employment history included work as an asset manager, collection clerk, loss mitigation clerk, retail store manager, furniture rental consultant, and data entry clerk. (Tr. 47, 71–72).

## III.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be

3

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to obtain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite his physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then

prove he in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.   ANALYSIS

Baker raises three issues on appeal. He claims that the ALJ erred by failing (1) to discuss that his mental impairments did not meet or equal sections 12.07 and 12.08 of the Listing, (ECF No. 15 at 2, 3–5); (2) to properly evaluate medical opinion evidence in his paragraph B assessment and RFC determination, (*Id.* at 3, 9–13); and (3) to establish the existence of work Baker could perform (*Id.* at 3, 13–15).

**A.    The ALJ's error at step three was not harmful.**

At step three, disability exists if a claimant shows that his impairment meets or equals one of the impairments in the Listing and the duration requirement is met. 20 C.F.R. §

404.1520(a)(4)(iii). Whether a claimant's impairment meets the criteria of a listed impairment is usually more a question of medical fact than opinion because most of the criteria are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). And the ALJ is responsible for ultimately deciding the legal question of whether a listing is met or equaled. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); *see generally* SSR 96-5p, 1996 WL 374183, at *3; 20 C.F.R. §§ 404.1526(e), 416.926(e). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about such impairment, including findings from medical sources. 20 C.F.R. § 404.1526(c). Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." *Id.* 404.1526(a).

The claimant has the burden of proving that an impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* A court will find that substantial evidence supports the ALJ's finding at step three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

When the ALJ's decision at step three is at issue, a reviewing court must (1) determine whether the ALJ supported the step-three determination with a discussion of the relevant evidence, and, if the ALJ failed to do so, (2) determine whether the error was harmless. *Audler*, 501 F.3d at 448–49. "Although it is not always necessary that an ALJ provide an exhaustive discussion of the

evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler*, 501 F.3d at 448). "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error calls into question the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).

The ALJ supported his step three determination with a discussion of the relevant evidence. Listings 12.04 and 12.06 refer to three paragraphs (A, B, and C) that each contain criteria that a claimant's mental disorder must satisfy to meet the Listing. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A2 ("[Y]our mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C."). The "paragraph B" criteria represent the areas of mental functioning used in a work setting. *Id.* § 12.00A2b "They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* To satisfy the paragraph B criteria, a claimant's "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* In his step three determination, the ALJ specifically recited the paragraph B criteria standard and stated Baker's mental impairments did not satisfy either of Listing 12.04's or 12.06's requirements because he only had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating,

persisting, or maintaining pace; and mild limitations in adapting or managing himself. (Tr. 16). In each of the four areas of mental functioning, the ALJ discussed relevant evidence, including Baker's testimony and evidence in the record, to support his determination that Baker's mental impairments did not satisfy the paragraph B criteria. (*See id.*)

But Baker's argument is not directed toward the ALJ's finding that Baker did not meet the Listing requirements for sections 12.04 and 12.05. (ECF No. 15 at 5). His argument is that the ALJ erred because he did not discuss the Listings under sections 12.07 (somatic symptom and related disorders) and 12.08 (personality and impulse-control disorders). (*See id.*). At step two, the ALJ found that Baker had the severe impairments, among several others, of somatization disorder and personality disorder. (Tr. 15, Finding 3). Both Listings 12.07 and 12.08—like Listings 12.04 and 12.05—require that a claimant satisfy the paragraph B criteria. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A2 ("[Claimant's] mental disorder must satisfy the requirements of both paragraphs A and B.").

Baker has the burden of demonstrating that he meets the requirements for Listings 12.07 and 12.08. *See Audler*, 501 F.3d at 449. Baker attempts to meet this burden by arguing that the ALJ's RFC made no accommodations for his somatization and personality disorders and by speculating that Baker's inconsistent assertions of pain in contrast to his post-surgical shoulder improvement could be explained by his somatization disorder. (Tr. 4–5). Baker, however, presents no evidence to prove his mental impairments caused any marked or extreme limitations in paragraph B's four areas of mental functioning.

The criteria in the Listings are designed to be "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). This is because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Zebley*, 493 U.S. at 532.

Because Baker failed to present any evidence that his mental impairments satisfied Listing 12.07's and 12.08's severity requirements, he has not met his heavy burden to show that the ALJ's failure to discuss or mention those Listings was harmful error.

**B.     The ALJ properly supported his evaluation of medical opinion evidence.**

Baker argues that the ALJ's paragraph B assessment and RFC determination are not supported by substantial evidence because he failed to properly evaluate medical opinion evidence in the record. (ECF No. 15 at 5–6, 9–10). Specifically, Baker claims that the ALJ did not properly evaluate the opinions of George R. Mount, Ph.D., a consultative examining psychologist, and Sharon L. Rogers, Ph.D., the ALJ's consultative nonexamining psychologist. (ECF No. 15 at 5–9). Bakers states that the ALJ erred because his paragraph B assessment is inconsistent with their medical opinions. (*Id.* at 9). Baker also claims that the ALJ erred by rejecting all the medical opinion evidence in the record, except for Dr. Anigbogu's opinion and Dr. Roger's first set of answers to interrogatories. (*Id.* 12–13).

### 1. Dr. Mount's Medical Opinion

The ALJ properly considered and evaluated Dr. Mount's medical opinion. Because the record indicates Dr. Mount only examined Baker one time, he is classified as a nontreating source. 20 C.F.R. § 404.1502. Findings of fact made by consultative examiners regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from nonexamining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 34180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not limited by the consultative examiners opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2.

Although an ALJ is to consider all medical opinions in determining the disability status of a claimant, *see* 20 C.F.R. § 404.1527(b), the ALJ is not required to give controlling weight to medical opinions of nontreating sources. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 637 (N.D. Tex. 2013) (stating that an ALJ is not required to give the opinion of, inter alia, a consultative examiner controlling weight). So, the ALJ need only consider Dr. Mount's opinions as evidence to be weighed. *See id.* Accordingly, her medical opinions do not have controlling weight over Baker's case, and the ALJ could reject them if there is contradictory evidence in the record.

The ALJ considered and properly discussed the reasons for giving Dr. Mount's December 2016 medical opinion little weight. (*See* Tr. 20). In discussing Dr. Mount's diagnosis of Baker, the ALJ noted his "major depressive disorder, recurrent, severe with no psychosis; posttraumatic stress disorder; a somatization disorder; and a personality disorder, not otherwise specified and assessed [Baker] with serious limitations in social, occupational, and psychological functioning (Global Assessment of Function or GAF of 43)." (Tr. 20). The ALJ also noted Dr. Mount conducted a Beck Anxiety Inventory and a Beck Depression Inventory II. (Tr. 21). Next, the ALJ recited the symptoms reported by Baker during the examination. (*See id.*). The ALJ ultimately gave Dr. Mount's opinion little weight because (1) "[t]hese self-reported symptoms exceed objective evidence," (2) the symptoms are "questionable" because the "evidence indicates [Baker], who was lost to mental health care for several months prior to [Dr. Mount's] examination, remained stable on a low dose of Lexapro," and (3) the "exacerbated symptoms [sic] rarely reported by [Baker] or observed by treating sources in the months prior to this examination." (*Id*) (internal citations omitted). Thus, the ALJ considered and discussed the reasons why he gave Dr. Mount's medical opinions little weight.

The medical opinions the ALJ considered leading up to Dr. Mount's consultative examination included those of Seema Y. Haque, M.D., a treating source psychologist; Dona Locke, Ph.D., a consultative examining source; and Doug Hall, LCSW. (Tr. 20). The ALJ gave Dr. Haque's and Dr. Locke's findings significant weight. (*Id.*). The record indicates that Dr. Haque counseled Baker thirteen times from November 25, 2015 through January 11, 2017 after her initial consultation with Baker on November 4, 2015. (Tr. 2359–2375). As noted by the ALJ, Dr. Haque initially diagnosed Baker with bipolar disorder not otherwise specified and alcohol abuse, and prescribed Baker various medications. (Tr. 20, 2374). Dr. Haque further noted on Baker's mental status examination his mood as anxious, but did not note any other abnormalities, notwithstanding Baker's subjective feelings of depression, agitation, physical aggression, mood like roller coaster, racing thoughts, and panic attacks, among others. (*See* Tr. 2374–75). The ALJ specifically noted that throughout Dr. Haque's treatment of Baker, his mood fluctuated between anxious and euthymic. (Tr. 20, 2359–2374). Throughout Haque's treatment of Baker, his GAF varied between 62 and 68 and insight fluctuated between fair and good. (Tr. 2359–2374). The ALJ gave Dr. Haque's notes and opinion significant weight, finding they were consistent with Dr. Locke's neuropsychological evaluation of Baker conducted on October 4, 2016. (Tr. 20). Consistent with Dr. Haque's assessment, Dr. Locke found that Baker's cognitive profile was abnormal with a cognitive disorder not otherwise specified. (Tr. 20, 1878). Dr. Locke also found that Baker exhibited severe elevations of depression, anxiety, and sleepiness screens, but noted he was treated by a psychiatrist and therapist. (Tr. 1878–88).

Mr. Hall counseled Baker from October 25, 2015 to June 16, 2016 with a six month break before resuming counseling on December 15, 2016, which preceded the hearing before the ALJ by just four days. (Tr. 2042–2052). The ALJ gave Hall's records "some" weight to establish

Baker's "mild to moderate limitations in function." (Tr.20). The ALJ stated that Hall's records, which consisted of handwritten (and sometimes illegible) progress notes, indicated Baker was depressed and anxious. (*Id.*). The ALJ discussed how the Burns Depression Checklist and Burns Anxiety Inventory largely reflected Baker's self-reported symptoms. (*Id.*; *see also* Tr. 2043–2045, 2047–2049). The ALJ rejected the credibility of these checklists because the scores from December 15, 2016 showed a significant increase when compared to the scores from May 12, 2016. (Tr. 20). The ALJ noted Baker's self-reported depression score increased from 37 to 45 and anxiety score increased from 51 to 83, notwithstanding that Baker stopped seeing Hall for nearly six months. (Tr. 20). Thus, the ALJ gave Hall's notes and checklists only some weight. (*Id.*).

Considering the ALJ's discussion of the medical evidence preceding Dr. Mount's consultative evaluation, the ALJ properly considered Dr. Mount's opinions and rejected those findings that were inconsistent with the record. Thus, the ALJ did not err in giving Dr. Mount's opinion little weight. To find otherwise would require the undersigned to reweigh the evidence or resolve conflicts in the evidence that are for the Commissioner. *Carey*, 230 F.3d at 135.

### 2. Dr. Roger's Interrogatories

Because Dr. Rogers neither treated nor examined Baker, she is classified as a nonexamining source. 20 C.F.R. § 404.1502. Opinions from examining physicians must be considered and are generally given more weight than a medical opinion from a nonexamining source. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). Although Dr. Rogers is a nonexamining source, her opinions cannot be rejected without an explanation. *Id.* (citing *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980)).

The ALJ considered and properly discussed the reasons for giving Dr. Rogers' May 2019 answers to interrogatories substantial weight, but only giving her answers to supplemental

interrogatories little or limited weight. (*See* Tr. 21–22). The ALJ submitted interrogatories to Dr. Rogers that were tailored to ascertain the extent of Baker's mental impairments. (Tr. 2401–08). The ALJ fully summarized Dr. Rogers' finding in his RFC determination, noting Dr. Rogers' opinion of Baker's mental impairments; their impact to Baker's functional limitations; if they met the requirements of the Listing; and the extent of Baker's mental functioning in a work setting despite his mental impairments. (Tr. 21). The ALJ gave significant weight to Dr. Rogers' opinion concerning his limitations due to his mental impairments because they were consistent with other treatment records cited by Dr. Rogers. (*Id.*).

Baker contends that the ALJ's decision to reject Dr. Rogers' answers to Baker's supplemental interrogatories was error. (ECF No. 13 at 12). In giving little weight to Baker's answers to supplemental interrogatories 1, 5, and 6, which generally asked Dr. Rogers to define what "mild" and "moderate" means in more objective terms (e.g., "moderate limitation" in maintaining competitive pace without interruption means less than 70% of an 8-hour workday), the ALJ stated Baker's "duration/percentage of a work day, are non-program complaint, and would usurp the Commissioner's sole and exclusive authority to define program terminology." (Tr. 21). The ALJ then stated the definitions for "mild" and "moderate" by reciting the Commissioner's regulations, even though he did not cite to them. (*Id.*). Baker's first argument is that the ALJ failed to refer to any regulations that define "moderate" in terms of "fair" and generally argues the term "fair" is ambiguous. (ECF No. 12 at 12). But the ALJ's analysis here tracks the language used in the Commissioner's regulations. *See, e.g.*, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F2c ("Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."). Indeed, the ALJ's instructions to interrogatory 11 asked Dr. Rogers her opinion "as to the degree of limitations suffered by [Baker] in . . . (the NEW 'Paragraph B'

criteria) as a result of all of his impairments[.]" (Tr. 2403) (emphasis original). The interrogatory then proceeds to define none, mild limitation, moderate limitation, marked limitation, and extreme limitation by tracking the Commissioner's regulations. (*Id.*). Thus, Dr. Rogers apparently defined "moderate" in terms of fairly functioning independently, appropriately, effectively, and on sustained basis because she found, consistent with the paragraph B criteria, that Baker had moderate limitations in interacting with others. (Tr. 2404). Thus, Baker's argument is without merit.

Baker generally objects to the weight given to the supplemental answers to interrogatories by the ALJ because they are only clarifying Dr. Rogers' statements. (ECF No. 15 at 12). But as noted by the ALJ, many of Dr. Rogers' answers to the supplemental interrogatories rely on Baker's physical limitations, which are outside the scope of Dr. Rogers' expertise as a psychologist. *See* 20 C.F.R. 404.1527(c)(5); *see also* (Tr. 2474 (noting Dr. Rogers' qualifications as a psychologist)). Further, the ALJ gave greater weigh to Dr. Anigbogu's answers to interrogatories than those of Dr. Rogers, as they relate to Baker's physical limitations, because Dr. Anigbogu's expertise is as a specialist in physical medicine, rehabilitation, and pain medicine. (Tr. 2393). Moreover, the ALJ gave greater weight to Dr. Rogers' answers to the first set of interrogatories versus the supplemental answers because the first set of answers cite to specific evidence in the record, do not stray outside the scope of Dr. Rogers' expertise, and Dr. Rogers' unqualified opinion that Baker could focus and concentrate on simple work tasks, manage finances, and remember tasks and procedures is more consistent with the findings of "mild" and "moderate" limitations in the paragraph B criteria than as the limitations described in Dr. Rogers' answers to the supplemental interrogatories. Thus, the ALJ properly considered all of Dr. Rogers' answers to interrogatories by

explaining the reasons for giving the first set of answers more weight than to the supplemental answers.

### 3. Paragraph B Criteria

Baker contends that the ALJ erred in assessing the paragraph B criteria at step three because his findings are inconsistent with the medical opinions of Dr. Mount and Dr. Rogers. (Tr. 8–9). As discussed above, the ALJ considered and properly weighed Dr. Mount's and Dr. Rogers' medical opinions. Further, the ALJ's assessment of the paragraph B criteria is generally consistent with Dr. Rogers' answers to the first set of interrogatories, to which the ALJ gave substantial weight. (*Compare* Tr. 16 *with* Tr. 2404). The only variance was that the ALJ found Baker was moderately limited in concentration, persisting, and maintaining pace while Dr. Rogers found Baker mildly limited in concentration and persistence and moderately limited in pace. (*Id.*). This result, however, is consistent with the Commissioner's regulations. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F3f ("For paragraphs B1, B3, and B4, the greatest degree of limitation of any part of the area of mental functioning directs the rating of limitation of that whole area of mental functioning."). Further, Dr. Rogers' assessment cited, among others, to Dr. Haque's treatment records and Mayo Clinic records, which contain Dr. Locke's neuropsychological evaluation, to support her findings. Thus, the ALJ's paragraph B assessment is supported by substantial evidence in the record.

### 4. Dr. Anigbogu's Medical Opinion

Finally, Baker contends that because the ALJ's RFC includes limitations not mentioned by Dr. Anigbogu, then he somehow rejected his medical opinion. But the ALJ's decision defies Baker's argument. The ALJ specifically discussed Dr. Anigbogu's May 2017 answers to interrogatories, (Tr. 2393–98), giving them substantial weight to find that Baker could meet the demands of sedentary work despite his cervical spinal stenosis impairment. (Tr. 19). The ALJ

made this finding while discussing other medical opinion evidence describing Baker's physical limitations from (1) state agency physicians who found in December 2014, (Tr. 91–92), and in April 2015, (Tr. 103), that Baker was able to perform light work with limited bilateral overhead lifting and (2) consultative examining physician, Dr. Dhiman Basu, who evaluated Baker on December 14, 2014, and found that he could not do sedentary work (Tr. 1095–97). (Tr. 19). The ALJ gave little weight to Dr. Basu's medical opinion because it was contradicted by progress and treatment notes indicating Baker's limitations had increased during 2015, but not to the extent indicated by Dr. Basu or Baker's subjective reports that exceeded objective medical findings. (Tr. 19). The ALJ gave greater weigh to Dr. Anigbogu's medical opinion concerning Baker's physical limitations because he had reviewed the most recent medical evidence, which was more consistent with the entire record. (*Id.*). Further, although Dr. Basu's medical opinion is generally entitled to more weight because he is an examining source, *Kneeland*, 850 F.3d at 760, the ALJ is not required to give controlling weight to nontreating source opinions. *See Andrews*, 917 F. Supp. 2d at 637. Thus, the ALJ properly considered and resolved the conflicting medical evidence in the record. *See Newton*, 209 F.3d 448 at 452; *see also Escalante v. Astrue*, 286 F. App'x 179, 180 (5th Cir. 2008) (per curiam) (citing *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (recent medical evidence more probative)).

      Next, the ALJ added additional limitations related to Baker's shoulder pain, cervical spinal stenosis, and "syncope/seizure activity," which included limitations in reaching overhead; climbing ladders, ropes, and scaffold; balancing, stooping, kneeling, crouching, and crawling; climbing ramps and stairs; working with moving machinery, at unprotected heights, open flames and bodies of water, and driving. (Tr. 19–20). The ALJ added these limitations and cited to medical records from an office visit dated September 21, 2016, indicating Baker's left and right shoulder

range of motion showed decreased abduction with pain even though he had surgery in 2016. (Tr. 1181). Further, Dr. Anigbogu's medical opinion did not include Baker's most recent hospital visit on May 18, 2017 in which he was admitted for observation as a result of a seizure. (Tr. 2410–2411). Thus, the ALJ's decision to add more limitations than those expressed in Dr. Anigbogu's answers to interrogatories is not a rejection of his medical opinion, but is rather the ALJ exercising his broad discretion to weigh the evidence to determine the most Baker could do despite his physical and mental limitations.

Accordingly, the ALJ properly considered and discussed the medical opinion evidence to arrive at Baker's RFC, which is supported by substantial evidence.

**C.    The ALJ did not err at step five.**

At step five, the Commissioner has the burden to prove that the claimant can engage in alternative work that exists in the national economy. *Newton*, 209 F.3d at 453. The Commissioner makes this showing by relying on a VE's response to a hypothetical question that incorporate all disabilities recognized by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam). If the Commissioner makes a proper showing, then the burden shifts back to the claimant to rebut the finding that there are jobs that exist in significant numbers that the claimant can perform. *Newton,* 209 F.3d at 453.

Baker's argument at step five relies on his previous arguments that the ALJ did not properly evaluate the opinion evidence from Dr. Mount and Dr. Rogers and implement their more specific findings into Baker's RFC. An ALJ need only incorporate those limitations into hypothetical questions asked of the VE that are supported by substantial evidence and recognized by the ALJ. *Masterson*, 309 F.3d at 273. Having found that the ALJ properly evaluated Dr. Mount's and Dr.

Rogers' medical opinions and rejected those more specific limitations, Baker's argument here is without merit.

Baker's last argument is that the ALJ's RFC determination related to workplace absences is contrary to the VE's testimony. At the hearing, the ALJ asked the VE a series of questions that included all the limitations expressed in his RFC determination, except for the last requirement that the claimant would not be absent from work more than twice in a month. (*See* Tr. 70–75). The workplace absence limitation was apparently added by the ALJ in response to Baker's cross-examination of the VE, in which he asked the VE about workplace tolerance for absenteeism. (Tr. 75). The VE responded, "One to two absences per month." (*Id.*). Baker argues that the ALJ's RFC related to workplace absenteeism is inconsistent with the VE's response and therefore the ALJ's RFC is not supported by substantial evidence. (ECF No. 15 at 14–15). The VE's statement of "one to two absences per month" necessarily excludes more than two absences in a month. So too does the ALJ's RFC limitation of no more than two absences in a month. Although the ALJ's RFC could conceivable allow two absences per month on a consistent basis, this result does not contradict the VE's response, which allows for one to two absences per month. Accordingly, the VE's testimony constitutes substantial evidence in support of the ALJ's findings that Baker could perform other work and is not disabled.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's

Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    Signed April 11, 2019.

                                                Hal R. Ray, Jr.
                                                UNITED STATES MAGISTRATE JUDGE